1

2

3

4   Jeffry A. Davis (SBN 103299)
    Joseph R. Dunn (SBN 238069)
5   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
    3580 Carmel Mountain Road, Suite 300
6   San Diego, CA 92130
    Tel:    858-314-1500
7   Fax:    858-314-1501

8   Proposed Attorneys for Trustee
    Leslie T. Gladstone,
9

10                  UNITED STATES BANKRUPTCY COURT

11                     Southern District of California

12  | In re | Case No. 08-12317-LT7 |
    |-------|------------------------|
13  | Artes Medical, Inc., | Chapter 7 |
    | fdba Arsis Medical USA, Inc., | |
14  | fdba Artes Medical USA, Inc., | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER UNDER BANKRUPTCY CODE** |
15  | Debtor. | **SECTIONS 105, 363, AND 365, AND FRBP 6004, 6006 AND 9019, APPROVING:** |
16  | | **(1) SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND** |
17  | | **ENCUMBRANCES, (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY** |
18  | | **CONTRACTS AND UNEXPIRED LEASES, AND (3) SETTLEMENT WITH COWEN** |
19  | | **HEALTHCARE ROYALTY PARTNERS, L.P.; AND MEMORANDUM OF POINTS** |
20  | | **AND AUTHORITIES IN SUPPORT THEREOF** |
21

22      Date:   March 20, 2009
        Time:   10:00 a.m.
23      Dept:   3
        Judge: Laura S. Taylor

24          Leslie T. Gladstone, Chapter 7 Trustee (the "Trustee") of the estate of Artes Medical, Inc.,

25  fdba Arsis Medical USA, Inc., fdba Artes Medical USA, Inc. (the "Debtor"), by and through her

26  undersigned proposed counsel, hereby moves this Court (the "Motion") for an order: (1) approving

27  the sale of substantially all of the assets of the Debtor's estate ("Estate") free and clear of liens,

28  claims and encumbrances to ARTF Acquisition Corporation ("ARTF"), or such other successful

                                      1

1    bidder at public auction; (2) approving the assumption and assignment of certain executory contracts

2    and unexpired leases in connection therewith; and (3) approving a settlement with secured creditor

3    Cowan Healthcare Royalty Partners, L.P. ("CHRP") in the event ARTF is the successful bidder at

4    the sale. This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities

5    herein, and the Declaration of Leslie T. Gladstone in support of the Motion (the "Gladstone

6    Declaration") filed concurrently herewith, and upon such further oral and documentary evidence as

7    may be presented at the hearing on the Motion.

8                                                    I.

9                            **GENERAL SUMMARY OF RELIEF SOUGHT**

10            The Trustee, pursuant to sections 105, 363, and 365 of the Bankruptcy Code[1] and Bankruptcy

11    Rules[2] 6004, 6006 and 9019, moves the Court for entry of an order approving the sale of

12    substantially all of the remaining assets of the Estate free and clear of liens, claims and

13    encumbrances to ARTF or such other Recommended Successful Bidder (as defined below). The

14    Trustee has received an offer (the "Initial Bid") from ARTF to purchase all assets, properties,

15    interests, and rights of the Estate (the "Purchased Assets"), except for the Excluded Assets (as

16    defined below), and to assume certain liabilities related to the Debtor's operations (the "Assumed

17    Liabilities"). The Trustee and ARTF have agreed to the terms of an assets purchase agreement (the

18    "APA"), a copy of which is attached to the Gladstone Declaration as **Exhibit A**,[3] which details the

19    Purchased Assets and Assumed Liabilities, as well as the assets to be excluded from the sale and to

20    remain vested in the Estate (the "Excluded Assets"). The APA provides that ARTF will pay a

21    purchase price in the form of: (1) a release of CHRP's claims against the Debtor in an amount

22    exceeding $29.7 million, (2) the assumption of the Assumed Liabilities, and (3) $225,000 in cash.

23            ARTF's Initial Bid is subject to overbid in accordance with the detailed bidding procedures

24    set forth in the Court's Order on Ex Parte Motion Establishing Bidding and Sale Procedures, Docket

25    No. 71 (the "Procedures Order"). As explained in the Procedures Order, the Trustee will hold an

---

[1]  References herein to the "Bankruptcy Code" are to 11 U.S.C. §§ 101, *et seq.*

[2]  References herein to the "Bankruptcy Rule(s)" are to the Federal Rules of Bankruptcy Procedure.

[3]  The Schedules to the APA are in the process of being completed and will be filed with the Court by March 6, 2009,
except for the schedule of Executory Contracts (defined below) to be assumed and assigned to ARTF, which will be
presented to the Trustee in accordance with the procedures set forth in the Procedures Order (defined below).

4548286v.2

1 | auction of the Assets on March 19, 2009 at 10:00 a.m. (the "Auction") at which qualified bidders (as

2 | defined in the Procedures Order) may bid on the Debtor's assets. On March 20, 2009, the Court will

3 | hold a hearing on this Motion (the "Sale Hearing") at which time the Trustee will request the Court

4 | approve the sale to ARTF or such other Qualified Bidder which the Trustee determines, in her

5 | business judgment, has presented the best offer and should be recommended to the Court for

6 | approval (the "Recommended Successful Bidder").

7 | In connection with the proposed sale, the Trustee seeks to assume and assign to the

8 | Recommended Successful Bidder certain executory contracts and unexpired leases (the "Executory

9 | Contracts") related to the Debtor's business. Those Executory Contracts, along with Trustee's

10 | estimate of the cure amounts associated with each, are listed on **Exhibit A** hereto. Pursuant to the

11 | Procedures Order, each potential Recommended Successful Bidder is required to identify those

12 | Executory Contracts it wishes to assume at or before March 13, 2009 at 12:00 p.m. (California time)

13 | (the "Bid Deadline"). The Trustee will present the Court and interested parties with a final list of the

14 | Executory Contracts to be assumed by the Recommended Successful Bidder at or before the Sale

15 | Hearing. Any cure amounts associated with each assumed Executory Contract will be paid at the

16 | closing of the proposed sale.

17 | Finally, the Trustee seeks authority from the Court to settle all claims by and between CHRP

18 | and the Estate in the event ARTF is the Recommended Successful Bidder. CHRP is the sole

19 | stockholder of ARTF. CHRP asserts a secured claim against the Estate in an amount exceeding

20 | $29.7 million, which is comprised of three components: (1) $21.7 in connection with a February 12,

21 | 2008 revenue financing; (2) $8 million on account of a loan to the Debtor on or about February 12,

22 | 2008; and (3) the amounts paid to the Debtor pursuant to court-approved post-petition financing.

23 | The Trustee has analyzed potential claims against CHRP based on, among other things, Chapter 5 of

24 | the Bankruptcy Code. As explained in more detail below, the Trustee has determined that the merits

25 | of any avoidance claims against CHRP are uncertain. The Trustee anticipates that pursuing such

26 | claims would likely give rise to protracted litigation and appeals which would be counter-productive

27 | and detrimental to the interests of the Estate. Thus, the Trustee seeks, in connection with the sale to

28 |

3

1 ARTF, authority to settle and release all claims by and between CHRP and the Estate pursuant to

2 Bankruptcy Rule 9019.

## II.

## JURSDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, and 365, and Bankruptcy Rules 6004, 6006 and 9019.

## III.

## FACTUAL BACKGROUND

On December 1, 2008, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Petition Date").  On January 8, 2009, this Court authorized the Trustee to operate the Debtor's business and to use the cash collateral of secured creditor CHRP.

### A.    Description and History of the Debtor's Business

Prior to the Petition Date, the Debtor was a publicly traded, San Diego-based medical technology company focused on developing, manufacturing and commercializing aesthetic injectable products for the dermatology and plastic surgery markets.  Debtor's flagship technology, called ArteFill®,[4] is an injectable dermal filler for correcting facial wrinkles and lines.  The filler is non-resorbable and therefore lasts for quite a long time, perhaps up to five years or more.  The other collagen filler products in the market are more or less temporary, and new injections are required quite often.  ArteFill is approved by the United States Food and Drug Administration ("FDA").  Accordingly, two of the Debtor's primary assets are the FDA licenses that allow Artes to produce ArteFill.

Constant, continuous activity is required to maintain the business in an FDA-compliant manner.  The finished product must be refrigerated and some of the manufacturing inventory must remain frozen.  Much of the manufacturing must be done in clean rooms at various levels of sterility; the rooms must remain clean even though there is no present manufacturing.  All of this requires

---

[4]  ArteFill® is a registered trademark, but further references to it will omit the "®".

4

1    personnel on site to check temperatures, ensure that the clean rooms have positive air pressure (so

2    that if there is a breach, air leaks <u>out</u> of the clean room, and not in), and generally keep operations in

3    good order.

4          The Trustee has determined that the Debtor's assets should be sold, essentially as a going

5    concern, by a public auction process whereby the Court would approve a sale by not later than

6    March 20, 2009.  The Trustee believes that a delay in a sale after that date is likely to result in a

7    substantial decline in the value of the Debtor's assets due to a number of factors including: (a) the

8    absence of Debtor's products from the stream of commerce; (b) loss of personnel necessary to the

9    ongoing business; (c) loss of perishable inventory due to passage of time; (d) the public turning to

10   other products; (e) the cost of maintaining the assets before a sale can occur; and (f) potential

11   disruption with regard to regulatory compliance and existing regulatory licenses.

12          ~~A.~~**B.**   **CHRP's Pre-Petition Claims and Post-Petition Loan**

13          On February 12, 2008, the Debtor and CHRP consummated a transaction in which, among

14   other things, CHRP paid the Debtor $21.5 million in the following two components: (A) $15 million

15   in exchange for the right to receive (i) a specified percentage of the Debtor's net product sales of

16   ArteFill and certain other products related to ArteFill within the United States through December 31,

17   2017, and (ii) an aggregate of $15 million in certain future lump sum payments from the Debtor

18   (collectively, the "Revenue Purchase"), and (B) $6.5 million as a senior term loan (the "Secured

19   Note"; together with the Revenue Purchase, the "Secured Obligations").

20          Under the Revenue Purchase, CHRP purchased a percentage of the Debtor's incoming

21   revenue for a set period of time and certain lump sum payments in return for its cash payment to the

22   Debtor.  All revenue payments from the Debtor's customers are made to a joint concentration

23   account from which the bank pays the purchased percentage to CHRP and the remainder of the

24   payment goes to the Debtor.  In connection with the Revenue Purchase, the Debtor signed a security

25   agreement granting a security interest in most of its assets to CHRP to secure the Debtor's

26   obligations under the Revenue Purchase.[5]  The Revenue Agreement also provides for a "put option"

27   whereby on occurrence of certain specified events, CHRP could "put" the revenue stream and lump

28

---

[5]   The Secured Note is also secured by all of the Debtor's assets.

5

4548286v.2

sum payments back to the Debtor for (i) the original purchase price, plus (ii) the greater of CHRP's internal rate of return and an amount equal to fifty percent (50%) of the original purchase price, in each case less amounts already received from the Debtor on account of the Revenue Purchase (the "Floored IRR").

Prior to the Petition Date, CHRP gave the Debtor notice that it was exercising the put option. CHRP now asserts it has a perfected, secured claim in the amount of the put price ($15 million + the Floored IRR). CHRP is also owed approximately $8 million under the Secured Note based on the $6.5 million principal balance, interest and the assessment of a prepayment penalty.

In addition to the pre-petition funding from CHRP, after her appointment the Trustee determined that the Debtor did not have sufficient funds to keep operating through the date of any potential sale of its assets. In order to preserve the value of the Debtor's assets as a going concern, the Trustee sought and the Court approved a senior post-petition loan from CHRP in the amount of up to $2.0 million (the "Postpetition Financing").[6] *See* Docket No. 63. Pursuant to the terms of the Postpetition Financing, CHRP has a post-petition secured administrative claim in the amount of actual monies funded.

### A.C.  The Proposed Sale

1.  **The Assets**

Through the proposed sale,[7] the Trustee seeks authority to sell to ARTF substantially all of the assets, properties, interests and rights of the Debtor, free and clear of all liens, claims and encumbrances, including, but not limited to, those assets listed in Section 2.1(a)-(q) of the APA. These assets include, but are not limited to:

(i)  the business of the Debtor as a going concern (the "Business") and all goodwill associated therewith;

---

[6]  Under the terms of the Postpetition Financing, CHRP agreed to provide the Debtor with up to $1.0 million of initial funding, with another $1.0 available only upon subsequent agreement of CHRP.

[7]  The following is a summary of the proposed sale to ARTF and in no way modifies or supplants the terms of the APA or the parties' agreement with respect to the sale. Capitalized terms not defined in this subsection shall have the meaning ascribed to them in the APA. To the extent any conflict exists between the language in this summary and terms of the APA, the APA shall govern.

6

4548286v.2

1    (ii) the Debtor's interest in and to the executory contracts and unexpired leases

2 designated on Schedule 2.1(b) of the APA;

3    (iii) the Debtor's Regulatory Approvals and any Regulatory Approval Applications;

4    (iv) all Intellectual Property, Products, Equipment, and Inventory;

5    (v) all books, records and other documentation of the Debtor that relates to the Purchased

6 Assets;

7    (vi) all rights, privileges, claims, counterclaims, demands, causes of action, and options of

8 the Company to the extent relating or pertaining to the Purchased Assets or the Business arising out

9 of events occurring on or prior to the Closing, excluding avoidance Claims of the Company arising

10 under Chapter 5 of the Bankruptcy Code, and commercial tort claims other than the Lemperle

11 Option (defined below);

12    (vii) the right, but not the obligation, to obtain the Lemperle Claim[8] from the Trustee for

13 no additional consideration (the "Lemperle Option") if either (i) within three (3) months after the

14 closing of the sale, the Trustee has not delivered written notice to ARTF of her intent to pursue the

15 Lemperle Claim, or (ii) at any time after delivering any such written notice, the Trustee ceases to

16 pursue the Lemperle Claim prior to obtaining a final non-appealable judgment, settlement or

17 otherwise;

18    (viii) all other or additional privileges, rights, interests, properties and assets of every kind

19 and description and wherever located that are used in connection with the Business or the Purchased

20 Assets, other than the Excluded Assets;

21    (ix) all rights under warranties, representations and guarantees made by third parties

22 relating to any Purchased Assets or Assumed Liabilities;

23    (x) all cash and cash equivalents held in the name of the Debtor, or by the Trustee on

24 account of the Debtor, other than the Excluded Cash;

25

26 ————————————

[8] The APA defines the Lemperle Claim as "the case filed in the Superior Court of California, County of San Diego on

27 August 29, 2008 as Case No 37-2008-00090739-CU-BC-CTL, as amended by the first amended complaint on October
23, 2008, captioned Artes Medical, Inc., a Delaware corporation, plaintiff, v. Stefan M. Lemperle, Gottfried H.

28 Lemperle, H. Michael Shack, Charles A. Schliebs, Terry Knapp, Robert Binkele, Barry Vogel, Eric Donsky, Johan
Brahme, William Kachioff, Barry Rubin, and Does 1-50, inclusive, defendants."

4548286v.2

(xi)    all accounts receivable of the Company and notes receivable, together with all unpaid accrued interest thereon and all rights of collection with respect thereto;

(xii)    any intercompany accounts receivables owed to the Debtor by any of the Debtor's subsidiaries;

(xiii)    any and all instruments, prepaid assets and deposits, letters of credit proceeds, unbilled costs and fees, tax refunds and accounts relating to any Purchased Assets;

(xiv)    all of the capital stock and/or equity securities of the Debtor's subsidiaries; and

(xv)    all permits and business licenses related to the Purchased Assets or the Manufacturing Facility Lease.

Section 2.2 of the APA specifically excludes from the Purchased Assets and Assumed Liabilities (1) any avoidance claims the Estate may have under Chapter 5 of the Bankruptcy Code, (2) the unexpired lease for the Debtor's expansion facility at 5880 Pacific Center Boulevard in San Diego, (3) any commercial tort claims (other than the Lemperle Option); (4) all unused retainers paid to lawyers and accountants retained by the Debtor; and (5) any other assets listed on Schedule 2.2(h) to the APA.  Also excluded from the Purchased Assets are the Cash Amount (defined below) and any cash the Trustee is permitted to use and actually uses pursuant to the Cash Collateral Agreements and pursuant to the Postpetition Financing from CHRP approved by the Court on February 11, 2009.

2.    **Assumption of Executory Contracts**

Section 7.3 of the APA provides that ARTF, as the purchaser, will be exclusively responsible for the cure of all monetary defaults with respect to the Executory Contracts to be assumed and assigned in connection with the sale pursuant to Section 365 of the Bankruptcy Code.  The Trustee reserves the right to remove Executory Contracts that the successful bidder does not wish to retain and subsequently assume or reject such removed Executory Contracts.

3.    **The Assumed Liabilities**

Section 2.3 of the APA provides that ARTF will assume, as of the effective closing of the sale, (i) all liabilities of the Debtor arising on or after such closing date under the Executory Contracts assumed and assigned to ARTF (the "Assumed Contracts"); (ii) all liabilities necessary to

8

4548286v.2

assume and assign the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code; and (iii) any sales or transfer taxes applicable to the transfer of assets under the sale.

### 4.    The Consideration

In return for the Assets, ARTF will submit a credit bid in the amount of $22.65 million with respect to its outstanding claims under the Secured Obligations and the Postpetition Financing. In addition, ARTF will pay the Trustee cash in the amount of $225,000 (the "Cash Amount"). Further, CHRP will agree to increase the Carve-Out under the Cash Collateral Agreement to $250,000.

### 5.    Mutual Releases

Sections 4.2(b) and 4.3(c) of the APA provides that upon consummation of the sale to ARTF, the Trustee and CHRP will execute mutual releases of any and all claims, rights or causes of action each may have against the other, including, but not limited to, any claims CHRP may have under the Secured Obligations and Postpetition Financing.

### 6.    The Sale Process

As stated above, on February 20, 2009, the Court entered the Procedures Order, which details the procedure for interested parties to submit bids for purchase of the Assets. The following is a summary of the several relevant provisions of that Order:[9]

- Qualified Bidders may submit Qualified Bids on or before the Bid Deadline;
- Qualified Bids must be for cash and in an amount at least $100,000 higher than the highest and best Qualified Bid received prior to the Auction (the "Starting Bid"), and each subsequent bid must be at least $100,000 higher than the previous bid amount;
- Qualified Bidders must make a deposit of cash equal to at least 10% of the total value of such bidders Qualified Bid;
- Qualified Bidders must complete all due diligence prior to the Bid Deadline;
- The Auction will be held at 10:00 a.m. on March 19, 2009 at the offices of the Trustee's undersigned proposed counsel;

---

[9]  The following is a summary of the bidding and auction procedures set forth in the Procedure Order and approved by the Court and in no way alters such procedures. To the extent any summary of those procedures conflicts with the actual terms of the Procedures Order, the latter shall govern. Capitalized terms not defined in this section shall have the meaning ascribed to them in the Procedures Order. Interested parties should read the Procedures Order carefully to ensure any bids are submitted in compliance with the court-approved procedures.

4548286v.2

- The Trustee will evaluate all Qualified Bids and determine which bid, if any, should be submitted to the Court for approval as the Recommended Successful Bid;

- The Assets are to be sold "AS IS, WHERE IS" and without any representations or warranties of any kind, nature or description by the Trustee or her agents or representatives;

- Any party to an Executory Contract listed on Exhibit A hereto shall file with the Court and serve on the Trustee's undersigned proposed counsel any opposition to assumption and assignment of such Executory Contract not later than the Bid Deadline, together with the grounds for any such opposition and/or any alternative cure amount;

- On or before the Bid Deadline, ARTF and any other Qualified Bidder must submit to the Trustee a list of the Executory Contracts that it would like the Trustee to assume and assign as part of any sale;

- Any objections to the assignment of any Executory Contract to a particular Qualified Bidder must be filed with the Court and served on the Trustee's undersigned proposed counsel by March 18, 2009 at 5:00 p.m. (California time), and must state in detail the grounds for such objection.

- The Trustee reserves the right to identify any Executory Contract that will not be assumed by the Trustee at any time prior to the conclusion of the Sale Hearing.

## IV.

## ARGUMENT

### A.    An Articulated Business Justification Exists For The Proposed Sale

Section 363(b) of the Bankruptcy Code provides that a trustee, "after notice and a hearing, may, use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The standard for approval of a sale of property of the estate under section 363(b) is whether there exists "some articulated business justification" for the proposed transaction. *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting *Institutional*

4548286v.2

*Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

Ample business justification exists for the proposed sale here. The Debtor commenced this chapter 7 case because it was clear no reorganization would be feasible. It appears CHRP is fully secured in all of the Debtor's assets and the debt to CHRP likely exceeds the value of the Debtor's assets. The Trustee believes that a sale of the Debtor's business as a going concern is the method most likely to maximize the value of Estate assets. In fact, the Trustee believes the sale process proposed is the only opportunity the Estate may have to derive any value from Estate assets above and beyond CHRP's secured claim.

Under the proposed sale, the Trustee will transfer substantially all of the assets of the Estate to ARTF, except for the Excluded Assets, and ARTF will assume certain liabilities of the Debtor. CHRP credit bids $22,650,000 with respect to the Secured Obligations,[10] with another $225,000 to be paid in Cash. The sale will unburden the Estate of the liabilities and continuing operating losses associated with the Debtor's business, while providing the Estate with some cash to fund further administration, including pursuit of avoidance actions, and to potentially pay claims of unsecured creditors, including priority employee claims.

The Trustee and CHRP will also execute mutual release of any and all claims and causes of action each may have against each other. As a result, the Estate will be relieved of CHRP's enormous secured claim. The Trustee will then be free to use the Cash Amount and any remaining cash collateral for the benefit of the Estate's other creditors. In addition, the Trustee may pursue avoidance claims under Chapter 5 of the Bankruptcy Code and commercial tort claims for the benefit of creditors other than CHRP. Given the size of CHRP's secured claim, the proposed sale to ARTF represents the only sure method of realizing any value for the Estate's other creditors.

In light of the foregoing, the Trustee believes the proposed sale to ARTF is in the best interests of the Estate.

---

[10] CHRP reserves the right to raise its credit bid in the event competing Qualified Bids are presented to the Trustee.

4548286v.2

1    ~~A.~~B.   **The Assets Should be Sold Free and Clear**

2         Section 363(f) of the Bankruptcy Code provides that a trustee, "may sell property under

3    subsection (b)…free and clear of any interest in such property of an entity other than the estate, only

4    if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2)

5    such entity consents; (3) such interest is a lien and the price at which such property is to be sold is

6    greater than the aggregate value of all liens on such property; (4) such interest is in bona fide

7    dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money

8    satisfaction of such interest." 11 U.S.C. 363(f). Here, the only entity with an "interest" in the

9    property to be sold to ARFT under the proposed sale is CHRP, the only party asserting a secured

10    claim against the Debtor. CHRP has consented to the sale and has agreed to release any interest in

11    any other estate assets upon the closing of the sale. As such, the Trustee should be allowed to sell

12    the Purchased Assets free and clear under Bankruptcy Code section 363(f).

13         **C.    Assumption and Assignment of the Assigned Contracts is Appropriate Under**

14    **the Circumstances**

15         By this Motion, the Trustee also seeks authority to assume and assign to ARTF (to the extent

16    identified by ARTF prior to the end of the Sale Hearing) the Executory Contracts identified on

17    Exhibit A hereto, which will enhance the value of the sale to the Estate by curtailing further

18    administrative liability to the Estate and eliminating substantial rejection damages claims.

19    Assignment of the Debtor's rights under the Executory Contracts is essential to ARTF operating the

20    Debtor's Business on a going forward basis and maximizing both parties' value from the sale.

21    Accordingly, the Trustee requests approval under section 365 of the Bankruptcy Code,

22    notwithstanding any provisions in the Executory Contracts, including those described in sections

23    365(b)(2) and (f)(1)-(3) of the Bankruptcy Code, that prohibit such assignment.

24         Section 365(f) of the Bankruptcy Code provides, in pertinent part, that: "The trustee may

25    assign an executory contract or unexpired lease of the debtor only if (A) the trustee assumes such

26    contract or lease in accordance with the provisions of this section; and (B) adequate assurance of

27    future performance by the assignee of such contract or lease is provided, whether or not there has

28    been a default in such contract or lease." 11 U.S.C. § 365(f)(2). Under section 365(a), a trustee

12

4548286v.2

1  "subject to the court's approval, may assume or reject any executory contract or unexpired lease of

2  the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming

3  an unexpired lease or executory contract of a debtor, providing that:

4      (b)(1)  If there has been a default in an executory contract or unexpired lease of
5          the debtor, the trustee may not assume such contract or lease unless, at the time of
           assumption of such contract or lease, the trustee –

6              (A) cures, or provides adequate assurance that the trustee will promptly
               cure, such default;

7              (B) compensates, or provides adequate assurance that the trustee will
8              promptly compensate, a party other than the debtor to such contract or
               lease, for any actual pecuniary loss to such party resulting from such
9              default; and

10             (C) provides adequate assurance of future performance under such
               contract or lease.

11  11 U.S.C. § 365. Although section 365 of the Bankruptcy Code does not set forth standards for

12  courts to apply in determining whether to approve a trustee's decision to assume an executory

13  contract, courts have consistently applied a "business judgment" test when reviewing such a

14  decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific*

15  *Railroad Co.,* 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.,* 558 F.2d 1369, 1173 (10th Cir.

16  1977); *In re Turbowind, Inc.,* 42 B.R. 579, 584 (Bankr. S.D. Cal. 1984). A trustee satisfies the

17  "business judgment" test when it determines, in good faith, that assumption of an executory contract

18  will benefit the estate and the unsecured creditors. *In re FCX, Inc.,* 60 B.R. 405, 411 (Bankr. E.D.

19  N.Y. 1986). The assumption and assignment of the Executory Contracts (to the extent determined

20  by ARTF) is a necessary part of the agreement with ARTF and, as stated above, will benefit the

21  estate.

22      The meaning of "adequate assurance of future performance" for the purpose of the

23  assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy

24  Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic

25  construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538

26  (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985)

27  (adequate assurance of future performance does not mean an absolute assurance that debtor will

28

13

4548286v.2

1  thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill.

2  1985).

3          Under the terms of the proposed sale, ARTF will be required to cure all monetary defaults

4  under those Executory Contracts it elects to have the Trustee assume and assign pursuant to Section

5  365 of the Bankruptcy Code.  Under the Procedures Order, counterparties to Executory Contracts

6  may object to assumption and assignment of their Executory Contract if they believe there is a

7  concern that they have not been provided adequate assurance of future performance.  Accordingly,

8  assumption and assignment of the Executory Contracts as part of the sale to ARTF is appropriate

9  under the circumstances.

10      **D.      ARTF Constitutes a Good Faith Purchaser Pursuant to Section 363(m) of the**

11  **Bankruptcy Code**

12          Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on

13  appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property

14  does not affect the validity of a sale or lease under such authorization to an entity that purchased or

15  leased such property in good faith…" 11 U.S.C. § 363(m).  "Under 11 U.S.C. § 363(m), an appeal

16  of a bankruptcy court's ruling on a [sale] generally cannot affect the rights of a good faith purchaser

17  of the foreclosed property, unless the debtor [or other complaining party] stays the…sale pending an

18  appeal." *Mann v. Alexander Dawson Inc. (In re Mann)*, 907 F.2d 923, 926 (9th Cir. 1990).

19          "[T]he primary goal of the mootness rule [embodied in section 363(m)] 'is to protect the

20  interest of a good faith purchaser . . . of the property,' thereby assuring finality of sales." *Onouli-*

21  *Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir.

22  1988) (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 901-02 (9th Cir.

23  1985)("*Suchy*")).  That goal is important in this case because ARTF needs assurance that its

24  purchase of the Purchased Assets will not be subject to future attack by objecting parties.

25          As set forth in the Gladstone Declaration, the protection of section 363(m) is appropriate in

26  this case because the proposed sales transaction is the product of extensive arms-length, good-faith

27  negotiations implemented between the Trustee, ARTF and CHRP.  *See Onouli-Kona Land Co.*, 846

28  F.2d at 1173 (lack of good faith within meaning of section 363(m) requires "fraud, collusion, . . . or

14

1   an attempt to take grossly unfair advantage of other bidders") (quoting *Suchy*, 786 F.2d at 902)).  As

2   a consequence, the requested finding that ARTF is a "good faith" purchaser within the meaning of

3   section 363(m) is appropriate under the circumstances.

4        **E.    The Court Should Approve the Settlement of CHRP's Claims**

5        Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a

6   hearing, the court may approve a compromise or settlement."  FRBP 9019(a).  Before approving a

7   settlement under Bankruptcy Rule 9019(a), the court must determine that it is fair, reasonable, and

8   adequate.  The reasonableness of a proposed settlement is determined by the particular

9   circumstances of each case, and "because the bankruptcy judge is uniquely situated to consider the

10   equities and reasonableness of a particular compromise, approval of a compromise will not be

11   disturbed on appeal absent a clear abuse of discretion."  *In re Walsh Construction, Inc.*, 669 F.2d

12   1325, 1329 (9th Cir. 1982).

13        In determining the fairness, reasonableness, and adequacy of a proposed settlement

14   agreement, the court must consider, among other things: (a) the probability of success in the

15   litigation; (b) the expense, inconvenience and delay necessarily attending it; and (c) the paramount

16   interest of creditors and a proper deference to their reasonable views in the premises.  *In re A&C*

17   *Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied* 479 U.S. 854 (1986); *see also,*

18   *Protective Committee or Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S.

19   414 (1968); *In re Justice Oaks II Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990); *In re Flight*

20   *Transportation Corp. Sec. Litigation*, 730 F.2d 1128, 1135 (8th Cir. 1984).  As long as the

21   bankruptcy court amply considers these factors, its decision must be affirmed.  *In re A&C*

22   *Properties, supra*, 784 F.2d at 1381.

23        In the event ARTF is the Recommended Successful Bidder, the Trustee and CHRP intend to

24   execute mutual general releases of any and all claims each may have against the other.  As stated

25   above, CHRP asserts a secured claim against the Estate in an amount exceeding $29.7 million, which

26   is comprised of the Secured Obligations and the Postpetition Financing.  The Trustee has analyzed

27   potential claims against CHRP based on, among other things, the Trustee's avoidance powers under

28   Chapter 5 of the Bankruptcy Code.

4548286v.2

1    While the Trustee has raised certain issues in connection with the avoidability of a portion of

2    CHRP's secured claim, it is unclear whether the Trustee would prevail in any avoidance litigation

3    against CHRP. The Trustee is unaware of any precedent similar to the Secured Obligations in the

4    context of avoidance actions. The value of the Estate's assets would also likely be disputed.

5    Moreover, it is likely that any avoidance claims would be aggressively defended by CHRP and any

6    decision on the merits in favor of the Trustee would be appealed. In the event that CHRP's secured

7    claim was challenged, ARTF would likely withdraw its offer to purchase the Debtor's assets. The

8    Estate does not have sufficient funds to finance protracted avoidance litigation at this time, much

9    less appeals, and even if the Estate were successful, CHRP would still have a sizeable secured claim.

10   Thus, the Trustee believes that settlement of CHRP's claims in connection with the sale is in the best

11   interest of the estate.

12       The proposed settlement will allow the Estate to retain the Cash Amount of $225,000. In

13   addition, CHRP would agree to increase the carve-out under the cash collateral budget by another

14   $50,000 (up to an aggregate of $250,000). In exchange, CHRP will release all claims it may have

15   against the Debtor and its Estate, except as expressly provided for under the APA. Thus, the

16   settlement will provide the Estate with a cash reserve which can be used to fund any avoidance

17   actions the Estate may have against parties other than CHRP for the benefit of the Estate's other

18   creditors. In light of the foregoing, the Trustee submits the proposed settlement with CHRP, in

19   connection with the sale to ARTF, is in the best interest of creditors and should be approved

20   pursuant to Bankruptcy Rule 9019.

21                                        **V.**

22                                  **CONCLUSION**

23       For all the foregoing reasons, the proposed sale transaction with ARTF, including the

24   settlement of CHRP's claims in connection therewith, is in the best interests of the Debtor and its

25   Estate and should be approved.

26       WHEREFORE, the Debtor respectfully requests that, pursuant to sections 105, 363, and 365

27   of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019, the Court (i) authorize the Trustee to,

28   in the absence of any other Recommended Successful Bidder, consummate the sale with ARTF and

4548286v.2

1  otherwise approve the terms of the APA, (ii) authorize the assumption and assignment to ARTF of

2  the Executory Contracts identified by ARTF in accordance with the Procedures Order; (iii) find

3  ARTF is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code; and

4  (iv) approve the settlement of CHRP's claims against the Debtor pursuant to Bankruptcy Rule 9019.

5

6  Dated:  February 24, 2009                      /s/ Jeffry A. Davis
                                                Jeffry A. Davis
7                                               Joseph R. Dunn
                                                MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
8                                               Proposed Attorneys for Trustee
                                                Leslie T. Gladstone
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        17

**PROOF OF SERVICE**

I am employed in the County of San Diego, State of California, over the age of eighteen years, and not a party to the within action. My business address is 3580 Carmel Mountain Road, Suite 300, San Diego, California 92130. On February 24, 2009, I served the within document:

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363, AND 365, AND FRBP 6004, 6006 AND 9019, APPROVING: (1) SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (3) SETTLEMENT WITH COWEN HEALTHCARE ROYALTY PARTNERS, L.P.; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

X      **FIRST-CLASS MAIL**: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California, addressed as set forth below.

       **ELECTRONIC MAIL**: By sending such document by electronic mail on February 24, 2009. To the best of my knowledge, the transmission was reported as complete and no error was reported that the electronic transmission was not completed.

See Attached Service List

I am employed in the office of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.; Jeffry A. Davis and Joseph R. Dunn are members of the bar of this Court.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 24, 2009, at San Diego, California.


*/s/ Diane Johnson*
Diane Johnson

4548286v.2

1

2

3  *In re Artes Medical, Inc.*
   USBC Case No. 08-12317-LT7

4  **SERVICE LIST**

5

6  <u>Attorneys for Debtor</u>
   Deborah J. Saltzman, Esq.

7  DLA Piper US LLP
   550 S. Hope Street, 23rd Floor

8  Los Angeles, CA 90071

9

10 <u>United States Trustee</u>
   David Ortiz, Esq.

11 Office of the United States Trustee
   402 W. Broadway, Suite 600

12 San Diego, CA 92101

13

14 <u>Attorneys for Cowen Healthcare Royalty
   Partners</u>

15 David Gould, Esq.
   23801 Calabasas Road, Suite 2032

16 Calabasas, CA 91302

17

18

19

20

21

22

23

24

25

26

27

28

<u>Attorneys for Trustee Leslie T. Gladstone</u>
Robert R. Barnes, Esq.
Jared A. Delgin, Esq.
Allen Matkins Leck Gamble Mallory &
Natsis LLP
501 W. Broadway, 15th Floor
San Diego, CA 92101-3541

<u>Attorneys for Cowen Healthcare Royalty
Partners</u>
James W. Kapp III, Esq.
Timothy R.M. Bryant, Esq.
McDermott Will & Emery LLP
227 W. Monroe
Chicago, IL 60606

<u>Attorneys for Creditor U.S. TelePacific
Corp.</u>
Erick Everbach, Esq.
U.S. TelePacific Corp.
515 S. Flower Street, 47th Floor
Los Angeles, CA 90071

4548286v.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Request for Special Notice
American Express Travel Related Services
Company, Inc.
c/o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Request for Special Notice
Anika Therapeutics, Inc.
c/o Daniel M. Glosband, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Attorneys for Creditor Higgs, Fletcher &
Mack LLP
Martin A. Eliopulos, Esq.
Higgs, Fletcher & Mack LLP
401 W. A Street, Suite 2600
San Diego, CA 92101-7913

Attorneys for BMR-Pacific Center
Boulevard, LLC, and BioMed Realty, L.P.
Victor A. Vilaplana, Esq.
Foley & Lardner LLP
402 W. Broadway, Suite 2100
San Diego, CA 92101-3542

Attorneys for Anika Therapeutics, Inc.
Daniel M. Glosband, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

Ricoh Business Systems
Attn:  Sarah Chang
5632 Bolsa Avenue
Huntington Beach, CA 92649

Ricoh Business Systems
Attn:  Christopher Reinnard
1123-A Warner Avenue
Tustin, CA 92780

Ricoh Business Systems
1111 Old Eagle School Road
Wayne, PA 19087

4548286v.2

1

2    *In re Artes Medical, Inc.*
     USBC Case No. 08-12317-LT7

3
     **ACTIVE CONTRACTS SERVICE**
4    **LIST**

5

6
     Adelbert Stagg Ph.D.                         Advanced Research Associates
7    53 Montecito                                 2107 Landings Drive
     Irvine, CA 92620                             Mountain View, CA 94043

8

9

10   American Society of Plastic Surgeons
     Attn: Tracey Hotta                           BioForm Medical
11   7794 Grow Drive                              1875 S. Grant St. #110
                                                  San Mateo, CA 94402-2667
12   Pensacola, FL 32514-7072

13

14
     BioMed Realty Trust, Inc.                    Clinical Reference Laboratory
15   17140 Bernardo Center Dr. Suite 222          8433 Quivira Road
     San Diego, CA 92128-2088                     Lenexa, KS 66215

16

17

18
     Coast-to-Coast Recruiters                    Comerica
19   2711 Cornell Cove                            11943 El Camino Real #110A
     Lago Vista, TX 78645-7238                    San Diego, CA 92130

20

21

22
     Cooley Godward Kronish LLP                   Cor-o-van
23   4401 Eastgate Mall                           Dept. 6143
     San Diego, CA 92121-1909                     Los Angeles, CA 90084

24

25

26

27

28

4548286v.2

1

2  Cyberscience Corporation
   10065 E Harward Ave. #800
3  Denver, CO 80231-5946

4

5

6  Fallbrook Engineering
   355 W. Grand Ave., #4
7  Escondido, CA 92025

8

9

10 I-Village
   500 Seventh Ave., 14th Floor
11 New York, NH 10018-4502

12

13

14 John H. Joseph, M.D.
   9400 Brighton Way #203
15 Beverly Hills, CA 90210

16

17

18 KEMA
   3889 Paysphere Circle
19 Chicago, IL 60674

20

21

22 Gottfried Lemperle, M.D.
   302 Prospect Street
23 La Jolla, CA 92037

24

25

26 Lifecyte, Inc.
   20 South Dudley, Suite 900
27 Memphis, TN 38103

28

Empire Asset Management Company
Attn: Greg Zeoli
2 Rector Street, 15th Floor
New York, NJ 10006-1819

Hach Ultra Analytical
Attn: Chris Syrengelas
7127 Collection Center Dr.
Chicago, IL 60693

JMP Securities
Attn: Ray Jackson, CFO
600 Montgomery Street, Suite 1100
San Francisco, CA 94111

Kampf Marianne
26 60528 Frankfurt
GERMANY

Lampire Biological Labs Inc.
P.O. Box 270
Pipersville, PA 18947

Stefan Lemperle
8326 El Paseo Grande
La Jolla, CA 92037

Manning, Selvage & Lee, Inc.
13273 Collections Center Drive
Chicago, IL 60693

22

4548286v.2

Merit Medical Systems, Inc.
Attn: Matt Lyons
1600 West Merit Parkway
South Jordan, UT 84095-2416

Nilson Corporate Solutions
Attn: Eric Nilson
578 Washington Blvd #227
Marina del Rey, CA 90292-5442

Pacific Rim Mechanical
7655 Convoy Court
San Diego, CA 92111

Pitney Bowes
P.O. Box 856390
Louisville, KY 40285-6390

Preston Gates
1735 New York Ave. NW Suite 500
Washington, DC 20006-5221

Prudential Clean Room Services
Attn:  Nate King
6948 Bandini Blvd.
Commerce, CA 90040

Ricoh
5095 Murphy Canyon Rd Ste. 120
San Diego, CA 92123

RPM Material Handling Co.
8530 Avenida Costa Norte
San Diego, CA 92154

Russell Reynolds Associates
Church Street Station
P.O. Box 6427
New York, NY 10249

Michael Salazar
4026 Peninsula Drive
Carlsbad, CA 92010

Salesforce.com
P.O. Box 842569
Boston, MA 02284

Harold Schreiber
5634 Abalone Place
La Jolla, CA 92037

Siemens Building Technologies
7850 Collections Center Dr
Chicago, IL 60693-0078

Sparkletts
PO Box 660579
Dallas, TX 75266-0579

4548286v.2

1

2  Sterigenics
7695 Formula Place
3  San Diego, CA 92121

Telepacific
P.O. Box 526035
Sacramento, CA 95852

4

5

6  Terminix
4633 Ridgeview
7  San Diego, CA 92123

Therapeutics, Inc.
Attn: Chuck Holland
9025 Balboa Ave #100
San Diego, CA 92123

8

9

10  Don Thrasher
P.O. Box 1235
11  Los Angeles, CA 90078

Veolia Environmental Services
2462-C South Santa Fe
Vista, CA 92084

12

13

14  William von Brendel
1768 Kings Road
15  Vista, CA 92084

Comerica
Two Embarcadero Center Suite 300
San Francisco, CA 94111

16

17

18

19

20

21

22

23

24

25

26

27

28

24

# EXHIBIT A

## Active Contracts

| Company Name | Contract Title | Description | Effective Date | Cure Amount |
|---|---|---|---|---|
| Adelbert Stagg Ph.D. | Termination Agreement | | 2/29/2008 | $0 |
| Advanced Research Associates | Master Service Agreement | Provide pre-clinical and clinical research services | 8/5/2008 | $0 |
| Advanced Research Associates | Project Specification Agreement | Assist in its management of the skin-test study, provide comprehensive data management and reporting services to support the clinical study | 8/5/2008 | $0 |
| American Society of Plastic Surgeons ("ASPS") | Partners in Quality Program Agreement | Provide two year unrestricted grant of $50,000 per year from Jan 1, 2008 to December 31, 2009 | Agmt dated 08/01/2007 becomes effective 01/01/2008 | $50,000 |
| BioForm Medical | Second License Agreement | Second License Agreement for Royalty Buyout from BioForm | 9/21/2007 | $0 |
| BioForm Medical | Settlement and License Agreement | License | 10/1/2005 | $0 |
| BioMed Realty Trust, Inc. | First Amendment to Amended and Restated Building Lease Agreement | Building 5870 Amendment to BioMed Realty Amended and Restated Lease Agreement dated August 21, 2007 | 10/7/2008 | $0 |
| BioMed Realty Trust, Inc. | First Amendment to Building Lease Agreement | Building 5880 Amendment to BioMed Realty Building Lease Agreement dated August 21, 2007 | 10/7/2008 | $0 |

| | | | | |
|---|---|---|---|---|
| BioMed Realty Trust, Inc. | Amended and Restated Building-Lease Agreement | Building 5870 | 8/21/2007 | $0 |
| BioMed Realty Trust, Inc. | Building Lease Agreement | Building 5880 | 8/21/2007 | $0 |
| Clinical Reference Laboratory | Master Laboratory Services Agreement | Agreement for laboratory analysis and study management for clinical studies | 6/6/2008 | $0 |
| Coast-to-Coast Recruiters | Recruiting Services Agreemetn | Provide recruiting services for marketing and sales positions | 8/5/2008 | $0 |
| Comerica | Pledge and Security Agreement | Corporate Card service agreement | 2/27/2007 | |
| Cor-o-van | Document Destruction Service Agreement | Agreement to provide document destruction services | 2/18/2005 | $0 |
| Cor-o-van | Agreement for Services | Agreement to provide offsite storage of electronic media weekly | 2/23/2005 | $0 |
| Cyberscience Corporation | End User License Agreement | Use of License software for CQ DM QAD DD CQ-W and CQ RT-w | 4/9/2007 | $0 |
| Empire Asset Management Company | Letter Agreement | Non-Exclusive Financial advisory | 4/17/2008 | $0 |
| Empire Asset Management Company | Letter Agreement | Financial Advisor and exclusive placement agent | 9/12/2008 | $0 |

| | | | | |
|---|---|---|---|---|
| Fallbrook Engineering | Consulting Agreement | Provide engineering support | 9/9/2008 | $0 |
| Hach Ultra Analytical | Service Contract Quote | Agreement for Services and products | 3/30/2006 | $0 |
| Hack Ultra Analytical | Calibration/Services Agreement | Agreement for Services and products | 3/1/2008 | $0 |
| I-Village | I-Village Services Agreement | Artefill campaign | 9/19/2007 | $0 |
| JMP Securities | Engagement Letter | Exclusive Financial Advisor for Strategic Alliances or Sale transaction | | $0 |
| John H. Joseph MD | Agreement for Grant in Support of Investigator Initiated Research | Conduct investigator initiated clinical study entitled: A Single Center Open-Label Study to Evaluate the Cutaneous Restorative Effects of Artefill in the Treatment of Primary and/or Secondary Nasal Defects Protocol: | 10/19/2007 | $0 |
| Kampf Marianne | Building Lease Agreement (Amendment) | Building Lease - Mediplant Germany | 11/11/2005 | $0 |
| Kampf Marianne | Building Lease Agreement | Building Lease - Mediplant Germany | | $0 |

| KEMA | Quotation for CE/ Quality System Verification | Services of CE & Quality System | 6/6/2005 | $0 |
|---|---|---|---|---|
| Lampire Biological Labs Inc. | Fixed Price Supply Agreement | Selling of Bovine Corium for Artefill | 3/1/2006 | $0 |
| Lampire Biological Labs Inc. | First Amendment to Fixed Price Supply Agreement | Agreement obligating buyer and seller to sell/buy 1,000 Kg of Bovine Coriuml | 8/14/2007 | $0 |
| Lemperle, Gottfried | Settlement Agreement | Confidential Settlement Agreement contained in Legal files | 5/11/2006 | $0 |
| Lemperle, Stefan | Settlement Agreement | Confidential Settlement Agreement contained in Legal files | 11/17/2006 | $0 |
| Lifecyte, Inc. | Bioanalytical Services Agreement | Lifecyte will act as an independent contractor to provide Bioanalytical services | 8/28/2008 | $0 |
| Manning, Selvage & Lee, Inc. | First Amendment to Consulting Agreement | Public Relation agency of record amended to as to scope of services/hours; Term; and Fees. | 8/15/2008 | $0 |
| Merit Medical Systems Inc. | Indemnification Agreement | Purchase syringe and cap components parts | 5/9/2007 | $6,000 |
| Nilson Corporate Solutions | Consulting Agreement | Provide information technology consulting assistance | 10/22/2008 | $0 |
| Pacific Rim Mechanical | Full Coverage Program (F.C.P.) | Provide Mechancial Services | 7/1/2008 | $0 |
| Pitney Bowes | EZ lease | lease of postage machine | 2/8/2007 | $0 |

| | | | | |
|---|---|---|---|---|
| Preston Gates | Settlement Agreement | Settlement Agreement btwn BioForm & Martin Lemperle | 11/9/2005 | $0 |
| Prudential Clean Room Services | Service Rental Agreement for | Monthly rental agreement for Scrubs & lab coats | 8/1/2005 | $0 |
| Ricoh | Equipment Lease | Agreement to lease copier equipment | 1/17/2005 | $0 |
| Ricoh | Equipment Lease | Agreement to lease copier equipment | 7/5/2005 | $0 |
| Ricoh | Equipment Lease | Agreement to lease copier equipment | 6/5/2006 | $600 |
| RPM Material Handling Co | Planned Maintenance Agreement | Provide Maintenance on 90 day cycle for Fork lift | 7/16/2005 | $0 |
| Russell Reynolds Associates | Letter Agreement | Search for CEO Candidate | 6/4/2008 | $0 |
| Salazar, Michael | Settlement Agreement | Confidential Settlement Agreement contained in Legal files | 11/10/2006 | $0 |
| Salesforce.com | Professional Services Agreement | Provide consulting for install of Salesforce.com | 10/14/2005 | $16,000 |
| Salesforce.com | Statemant of Work Artes Medical - SOW002 | Salesforce.com consulting and training | 3/23/2006 | $0 |
| Schreiber, Harald | Settlement Agreement and General Release | | 1/31/2007 | $0 |
| Siemens Building Technologies | Service Agreement | Technical support program for the facility | 9/2/2008 | $0 |
| Sparkletts | Service Agreement | Water/Coffee Service Agreement | 7/21/2005 | $0 |

| | | | | |
|---|---|---|---|---|
| Sterigenics | Processing Services Agreement | Agreement to provide Processing services | 8/22/2005 | $0 |
| Telepacific | Service Agreement | Provide internet T-1 and phone hubs | 5/31/2006 | $0 |
| Terminix | Commercial Pest Control Agreement | Pest Control | 7/25/2005 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement Amendment Two (2) | Protocol 521-01 (Cohen) Provides a change in the total Grant budget | 10/30/2007 | $0 |
| Therapeutics, Inc. | | Protocol 521-01 (Moy) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 2/7/2008 | $0 |
| Therapeutics, Inc. | | Protocol 521-01 (Raab) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 1/24/2008 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Clark) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 12/12/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Rand) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 12/17/2007 | $0 |

| | | | | |
|---|---|---|---|---|
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(Brandt)** Post approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 1/3/2008 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(Narins)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 12/12/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(J Adelglass)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 12/27/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(Cohen)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 9/20/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(Monheit)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 4/23/2008 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(Sadick)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 1/17/2008 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 **(Schlessinger)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 11/2/2007 | $0 |

| | | | | |
|---|---|---|---|---|
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Grimes) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 10/15/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Peter P. Rullan) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 11/15/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Michael H. Gold) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 10/25/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Stacy R. Smith) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 11/24/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Jeffrey Dover) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 10/15/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Mark Rubin) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 1/3/2008 | $0 |
| Therapeutics, Inc. | Amended and Restated Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Ava Shamban) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 4/17/2008 | $0 |

| | | | |
|---|---|---|---|
| Therapeutics, Inc. | Protocol 082-3051-401 Agreement for Grant Investigator Initiated Study | Protocol 082-3051-401 **(Rullan)** A Multi-Center Open-Label Study to Evaluate the Histologic Properties of PMMA Soft Tissue Based Implants in the Skin of Subjects Who have Previously Received Treatment with a PMMA Filler Material | 2/18/2008 | $0 |
| Therapeutics, Inc. | Protocol 082-3051-401 Agreement for Grant Investigator Initiated Study | Protocol 082-3051-401 **(Cohen)** A Multi-Center Open-Label Study to Evaluate the Histologic Properties of PMMA Soft Tissue Based Implants in the Skin of Subjects Who have Previously Received Treatment with a PMMA Filler Material | 12/4/2007 | $0 |
| Therapeutics, Inc. | Protocol 082-3051-405 Agreement for Grant Investigator Initiated Study | Protocol **082-3051-405** Correction of Atrophic Scars with Artefill **(Dr. James. M. Spencer)** | 12/4/2007 | $0 |
| Therapeutics, Inc. | Protocol 082-3051-409 Agreement for Grant Investigator Initiated Research | Protocol 082-3021-409 Effectiveness of Facial HIV Lipoatrophy Treated with Artefill **(Chelsea Eye & Cosmetic Surgery Associates/Joseph A. Eviatar)** | 9/30/2008 | $0 |

| | | | | |
|---|---|---|---|---|
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Werschler) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 11/13/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol 521-01 (Joseph) Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 11/13/2007 | $0 |
| Therapeutics, Inc. | Work Order #1 | Clinical research services related to Protocol D82-3002-07 | 6/4/2007 | $0 |
| Therapeutics, Inc. | Work Order Number Two (2) | Clinical research services related to Protocol D82-3001-07 | 6/4/2007 | $0 |
| Therapeutics, Inc. | Protocol D82-3002-07 Clinical Trial Agreement | Protocol D82-3002-07 Regents of the University of California Irvine, (Christopher Zachary) Conduct a clinical trial to study the safety and efficacy of ArteFill in subects desiring correction of nasolabial folds | 6/30/2008 | $0 |
| Therapeutics, Inc. | Protocol D82-3002-07 Clinical Trial Agreement | Protocol D82-3002-07 Saint Louis University, (Dee Anna Glaser) Conduct a clinical trial to study the safety and efficacy of ArteFill in subects desiring correction of nasolabial folds | 6/17/2008 | $0 |

| | | | |
|---|---|---|---|
| Therapeutics, Inc. | Protocol D82-3002-07 Clinical Trial Agreement | Protocol D82-3002-07 **Skin Care Research, Inc., (Marta Rendon)** Conduct a clinical trial to study the safety and efficacy of ArteFill in subjects desiring correction of nasolabial folds | 5/22/2008 | $0 |
| Therapeutics, Inc. | Protocol D82-3002-07 Clinical Trial Agreement | Protocol D82-3002-07 **University of Texas Southwestern Medical, (Jeffrey M. Kenkel).** Conduct a clinical trial to study the safety and efficacy of ArteFill in subjects desiring correction of nasolabial folds | 6/30/2008 | $0 |
| Therapeutics, Inc. | Protocol D82-3001-07 Clinical Trial Agreement | Protocol D82-3001-07 **(David C. Wilson, The Education and Research Foundation)** Conduct a clinical trial to evaluate the incidence of positive skin reactions to ArteFill Skin Test | 5/22/2008 | $0 |
| Therapeutics, Inc. | Clinical Trial Agreement Amendment One (1) | Protocol D82-3001-07 **(David C. Wilson, The Education and Research Foundation). Amends** original CTA to provide for a change in the number of total study subjects, payment, number and types of patient follow-up activities | 6/12/2008 | $0 |
| Therapeutics, Inc. | Clinical Trial Agreement Amendment One (1) | Protocol 521-01 (Moy) Amends initial CTA by modifying the name of the institution | 4/14/2008 | $0 |

| | | | |
|---|---|---|---|
| Therapeutics, Inc. | Protocol 082-3051-403 Agreement for Grant Investigator Initiated Study | Protocol 082-3051-403 **(Stacy Smith)** A single center randomized evaluator blinded study to assess the safety and efficacy of Artefille compared to Restylane and Radiesse in the Correction of Nasolabial Folds | 10/19/2007 | $0 |
| Therapeutics, Inc. | Protocol 521-01 Clinical Trial Agreement | Protocol **521-01 (Ava Shamban)** Post-approval study of the safety and efficacy of Artefill in subjects desiring correction of nasolabial folds | 10/25/2007 | $0 |
| Therapeutics, Inc. | Master Service Agreement | Managing the preclinical and clinical development of its new products in the field of dermatology | 6/4/2007 | $0 |
| Therapeutics, Inc. | Work Order #1 | Clinical research services related to **Protocol D82-3002-07** | 6/4/2007 | $0 |
| Therapeutics, Inc. | Work Order #2 | Clinical research services related to Protocol **D82-3001-07** | 6/4/2007 | $0 |
| Therapeutics, Inc. | Change Order One (to Work Order #1) | Change Order One revising budget from $6,532,667 to $7,981,762 | 1/1/2008 | $0 |
| Therapeutics, Inc. | Change Order One (to Work Order #2) | Change Order One to Work Order Two (2) Project Budget revision | 9/19/2008 | $0 |
| Therapeutics, Inc. | Contractor Agreement | expert consultation on medical, technical, regulatory, clinical practice, product positioning and product marketing matters relative to Artes' technology | 6/8/2006 | $0 |

| | | | | |
|---|---|---|---|---|
| Therapeutics, Inc. | First Amendment to Contractor Agreement | expert consultation on medical, technical, regulatory, clinical practice, product positioning and product marketing matters relative to Artes' technology | 12/8/2006 | $0 |
| Therapeutics, Inc. | Second Amendment to Contractor Agreement | expert consultation on medical, technical, regulatory, clinical practice, product positioning and product marketing matters relative to Artes' technology | 6/8/2007 | $0 |
| Therapeutics, Inc. | Third Amendment to Contractor Agreement | expert consultation on medical, technical, regulatory, clinical practice, product positioning and product marketing matters relative to Artes' technology | 9/8/2008 | $0 |
| Thrasher, Don | General Release and Settlement Agreement | Confidential Settlement Agreement contained in Legal files | 9/12/2006 | $0 |
| Veolia Environmental Services | Services Agreement | Provides Artes hazardous material and on-site services plan | 3/3/2008 | $0 |
| von Brendel | Settlement Agreement | Confidential Settlement Agreement contained in Legal files | 1/9/2007 | $0 |